IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHARLES AUSTIN PARKS

      Plaintiff,                      No. 2:10-cv-1804 MCE CKD P

    vs.

CHAPPELL-EVANS, et al.

      Defendant.                 FINDINGS AND RECOMMENDATIONS

_____/

        Plaintiff is a state prisoner proceeding pro se with an action under 42 U.S.C. § 1983.  He claims that in August 2009, while he was incarcerated at California State Prison-Sacramento (CSP-Sacramento), defendants Chappell-Evans and Bakewell, both medical personnel there, were deliberately indifferent to a serious medical need, in violation of the Eighth Amendment.  Specifically, he alleges that Chappell-Evans intentionally interfered with the administration of pain medication when she "falsely inform[ed] nurse practitioner C. Bakewell that plaintiff was hostile," and Bakewell used that information to discontinue the medication.  Complaint, ¶ 17 (Docket No. 1).  The defendants have jointly filed a motion for summary judgment.

////

////

1

I. <u>Standard of Review for Summary Judgment</u>

Summary judgment is appropriate when the movant demonstrates that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" <u>Id</u>. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. <u>See id</u>. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Id</u>. In that circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." <u>Id.</u> at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. <u>See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. <u>See</u> Fed. R. Civ. P. 56(e); <u>Matsushita</u>, 475 U.S. at 586 n.11. The opposing party

1  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome
2  of the suit under the governing law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
3  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.
4  1987).  The opposing party must also demonstrate that the dispute is genuine, i.e., that the
5  evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool
6  v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

7  　　　　　To establish the existence of a factual dispute, the opposing party need not
8  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual
9  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
10 trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce
11 the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"
12 Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963
13 amendments).

14 　　　　　In resolving the summary judgment motion, the court examines the pleadings,
15 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
16 any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,
17 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the
18 court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.
19 Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to
20 produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen
21 Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.
22 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply
23 show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken
24 as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no
25 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).
26 ////

II. <u>Factual background</u>

On August 14, 2009, plaintiff was involved in a physical altercation with another inmate at CSP-Sacramento. As a result, he was placed in administrative segregation ("ad-seg"). Defendants' Statement of Undisputed Facts (DUF) No. 5 (Docket no. 23-2).

Defendant Bakewell is a registered nurse practitioner (RNP) with the California Department of Corrections and Rehabilitation (CDCR). At all times relevant to this lawsuit, she was assigned to CSP-Sacramento, where her duties included establishing health care plans and initiating, prescribing and discontinuing drug therapy for inmates. Declaration of C. Bakewell, ¶ 2 (Docket No. 23-4).

Defendant Chappell-Evans is a licensed vocational nurse (LVN) with CDCR. At all times relevant to this action, she was assigned primarily to the ad-seg unit at CSP-Sacramento. Among her duties was distributing prescribed medications to inmates in ad-seg. Her first encounter with plaintiff was when he was sent to ad-seg after his altercation of August 14. Declaration of C. Chappell-Evans, ¶¶ 1-2 (Docket No. 23-3).

There appears to be no dispute that plaintiff was prescribed acetaminophen with codeine phosphate, known as Tylenol #3, on an as-needed basis for general complaints of pain stemming from an alleged assault that occurred more than a year and eight months before the events underlying this lawsuit. DUF No. 11. Tylenol #3 is a narcotic and controlled substance. DUF No. 12. In August 2009, it was CDCR policy to break up or crush oral narcotic medications before distribution in order to prevent inmates from hoarding or selling the drugs to other inmates. DUF No. 14.

Plaintiff testified in his deposition that on the morning of August 16, 2009, Chappell-Evans gave plaintiff his medication in "smashed up form." Plaintiff's Deposition at 13 (Docket No. 23-5, Ex. A). He attempted to give it back to her, but she would not accept it, so he "dumped it out of my hand" onto the tier floor. <u>Id.</u> at 14. He refused to accept the medicine because "I had no idea what type of medication that she was trying to give me and when I tried to

talk to her, she would not give me any type of response that warranted me taking the medication." Id. In his complaint, plaintiff explains that the root of his reluctance to take the unidentified powder was one of his inmate "neighbors" had on a previous occasion been given six of the wrong pills by mistake. Complaint at ¶ 10.

At the lunchtime distribution of medication on the same day, August 16, plaintiff again refused to accept the medication from Chappell-Evans. Plaintiff's Deposition at 16. This time, he refused without knowing in what form – crushed, broken, or whole – the medication was offered.[1] Id. at 16-17. Again, plaintiff says he tried to ask for medication in whole form so that he could know what he was taking, but Chappell-Evans did not respond. Id. at 17. At that point, he says, "I told her at the [cell] door that I was going to write her up." Id.

At the evening distribution of August 16, a different nurse delivered plaintiff's medication. Id. at 18. He testified that he accepted that medicine because it was in whole or half pill form. Id.

On August 17, Chappell-Evans returned with that morning's distribution. Again she brought it in crushed form, and again plaintiff refused. Id. at 18.

In her sworn declaration, defendant Chappell-Evans states that when she arrived with his medicine on the morning of August 17, plaintiff refused to come to the cell door and announced "I'm not taking anything from that bitch." Decl. of Chappell-Evans, ¶ 8. She also states that plaintiff "started kicking the cell door and using more profane language, referring to me" and "threatened to harm me physically." Id.

The parties differ somewhat on the dates on which plaintiff refused to take his prescribed medication. Chappell-Evans' work progress notes show that he first refused on August 15, not August 16, but there appears to be no dispute that he refused at least three times

---

[1] Plaintiff explained that the medicine was delivered by pouring the contents of an envelope into each inmate's hand. Id. at 16. On this second occasion, plaintiff refused the envelope entirely, thus never knowing for sure what form the medicine was in. Id.

soon after he arrived at ad-seg. Id., Ex. B. Chappell-Evans does not say that she was the staff member who told defendant Bakewell about plaintiff's refusals to take medicine in crushed form. Instead, her sworn declaration states that Bakewell "was advised by staff that [plaintiff] was hostile and violent to me regarding the distribution of his medication." Id. at ¶ 9. Her notes likewise state that "Bakewell heard how [plaintiff] has been acting [and] ordered Tyl[enol] # 3 [discontinued]."

In her sworn statement, Bakewell states that she learned on August 17 that plaintiff was being hostile and refusing to take the medications that Chappell-Evans was attempting to deliver. Decl. of C. Bakewell, ¶ 6. Bakewell says she reviewed Chappell-Evans' work progress notes, which indicated plaintiff's pattern of behavior over a three-day period. Id. She states further that plaintiff's records showed that he was prescribed to take Tylenol #3 on an as-needed basis. Id. at ¶ 7. Her sworn statement describes CDCR's policy for addressing inmates' refusals to take medication that is prescribed "as-needed":

> In August 2009, it was department policy that if a medication is prescribed on an as needed... basis and an inmate refuses the medication for three days, the medication can be discontinued based on the inmate's refusal. A medication refusal is defined as "when an inmate/patient refuses his prescribed medication or fails to comply with medication procedures at the cell front." There are different procedures for when an inmate refuses medication that is not prescribed on a[n as-needed] basis, including scheduling clinic visits on an urgent basis.

Id. at ¶ 4 (citation omitted).[2] On August 17, Bakewell "ordered that [plaintiff's] Tylenol #3 medication be discontinued due to his hostility and non-compliance." Id. at ¶ 8. Also pursuant to policy, plaintiff was scheduled to see a physician on September 3, 2009. After that appointment, his medication was renewed. Id. at ¶ 9.

////

////

---

[2] Bakewell quotes CSP-Sacramento's Operational Procedure Guide, which is attached to her declaration as Exhibit A.

6

III. Analysis

Plaintiff alleges that defendants were deliberately indifferent to a serious medical need by interfering with his prescribed treatment. In Estelle v. Gamble, 429 U.S. 97, 106 (1976), the Supreme Court held that inadequate medical care did not constitute cruel and unusual punishment cognizable under 42 U.S.C. § 1983 unless the mistreatment rose to the level of "deliberate indifference to serious medical needs." From this baseline standard, the Ninth Circuit has developed a two-part test for deliberate indifference:

> First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. This second prong – defendant's response to the need was deliberately indifferent – is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.

Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations and quotations omitted); see also McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir.1992), overruled in part on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir.1997). A medical need is serious if failure to treat the condition could cause further significant injury or the unnecessary and wanton infliction of pain. McGuckin, 974 F.2d at 1059.

> The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a "serious" need for medical treatment.

Id. at 1060.

On the second element – "the nature of the defendant's response" – the Ninth Circuit has commented that "the fact that an individual sat idly by as another human being was

7

1  seriously injured despite the defendant's ability to prevent the injury is a strong indicium of
2  callousness and deliberate indifference to the prisoner's suffering." Id. at 1060. "A defendant
3  must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order
4  for deliberate indifference to be established." Id. (emphasis added).
5        There is no Eighth Amendment violation if any delay in treatment is not harmful.
6  Shapely v. Nevada Bd. Of State Prison Com'rs., 766 F.2d 404, 407 (9th Cir.1985). However,
7  unnecessary continuation of pain may constitute the "harm" necessary to establish an Eighth
8  Amendment violation from delay in providing medical care. McGuckin, 974 F.2d at 1062.
9        A showing of merely inadvertent or even negligent medical care is not enough to
10 establish a constitutional violation. Estelle, 429 U.S. at 105-06; Frost v. Agnos, 152 F.3d 1124,
11 1130 (9th Cir.1998). A difference of opinion about the proper course of treatment is not
12 deliberate indifference, nor does a dispute between a prisoner and prison officials over the
13 necessity for or extent of medical treatment amount to a constitutional violation. See, e.g.,
14 Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242
15 (9th Cir.1989).
16     A.  Defendant Chappell-Evans
17       The gravamen of plaintiff's claim is that the decision to discontinue plaintiff's
18 medication caused him unnecessary pain. Even accepting as true the allegation that plaintiff
19 suffered pain or other harm, the court finds no material fact on which Chappell-Evans could be
20 held liable for it. Nothing in the record or the complaint suggests that defendant Chappell-Evans
21 made the decision to discontinue the medication or had the authority to make it. The basis of the
22 decision – three refusals to take crushed medicine and overt hostility toward Chappell-Evans –
23 was recorded in her notes. Plaintiff takes issue with Chappell-Evans' credibility in his
24 opposition, but he testified under oath that what she wrote with regard to his refusals was, save
25 some disagreement as to dates, true. Nothing in the record or the complaint suggests that she did
26 anything other than her assigned duty, which was to pass out medication at the appropriate time.

There can be no liability under § 1983 unless there is some affirmative link or connection between an individual defendant's actions and the claimed deprivation. Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Here, the affirmative link between Chappell-Evans and the discontinuance of plaintiff's medication is the fact that she did her job and truthfully recorded plaintiff's refusal to accept the medicine. There can be no genuine dispute about the lack of deliberate indifference in such conduct. Chappell-Evans should be dismissed from this case.

### B. Defendant Bakewell

In Russell v. Lappin, 2006 WL 167448 (W.D.Wisc.), the plaintiff, a federal prisoner, refused to exceed the recommended dosage printed on his medication's package even though prison medical officials had assured him that taking the higher dosage needed to suppress his acid reflux symptoms was not harmful. Despite this assurance, he continued to refuse and sued prison officials under the Eighth Amendment.

The federal district court for the Western District of Wisconsin addressed whether the plaintiff in Russell had made an allegation of imminent danger or serious physical injury sufficient to meet the exception of 28 U.S.C. § 1915(g). The court held he had not because "the harm petitioner is suffering is harm of his own choosing.... To escape the harm, he needs only to begin taking the medication in the dose recommended by health officials at the prison." Id. at *2.

There is no dispute in this case that defendant Bakewell made the decision to discontinue plaintiff's pain medication. The reasonable inference is that this decision caused plaintiff pain until September 3, when his prescription was reinstated. As was true in Russell, however, this plaintiff, if he suffered pain as a result of the discontinuation, suffered by his own choosing. The treatment for any pain he felt was literally in his own hand on at least three occasions. He was in no position to second-guess whether medical staff were giving him the correct medication at the expense of his own treatment. See Toguchi, supra.

The Eighth Amendment only prohibits the <u>unnecessary</u> and <u>wanton</u> infliction of pain. See <u>Hudson v. McMillan</u>, 503 U.S. 1, 11 (1992); <u>Campbell v. Wood</u>, 18 F.3d 662, 710 (9th Cir. 1994). There is no evidence on record that Bakewell made a decision that caused him pain unnecessarily. If anything, plaintiff forced the discontinuance on himself. Nor is there any evidence that could support the reasonable inference that Bakewell acted wantonly. Even if her decision could somehow be construed as erroneous – and plaintiff gives no indication as to how the court could give it that construction – it still, at the very worst level of subjective culpability, could only be characterized as negligent. As stated above, a showing of merely inadvertent or negligent medical care is not enough to establish a constitutional violation. <u>Estelle</u>, 429 U.S. at 105-06.

The claim against defendant Bakewell should be dismissed.

IT IS HEREBY RECOMMENDED that the motion for summary judgment (Docket No. 23) be granted, the complaint dismissed with prejudice and this case closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within seven days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: August 31, 2012

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

3
park1804.57